UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GODFREY CADOGAN,

          Plaintiff,                  CIVIL ACTION NO. 06-12010

        v.                       DISTRICT JUDGE LAWRENCE P. ZATKOFF

ERVIN BELL, ERIK BALCARCEL,      MAGISTRATE JUDGE VIRGINIA M. MORGAN
and JAN TROMBLEY,

          Defendants.
_____/

**REPORT AND RECOMMENDATION**

**I. Introduction**

      This is a *pro se* 42 U.S.C. § 1983 action[1] in which the plaintiff, an inmate in the custody

of the Michigan Department of Corrections (MDOC), alleges that, among other constitutional

violations, defendants denied him access to the courts and retaliated against him for trying to

access the courts.  The matter comes before the Court on Defendants Bell and Balcarcel's

Motion for Summary Judgment (D/E #21) and Plaintiff's Motion for Partial Summary Judgment

(D/E #23).  For the reasons discussed below, this Court recommends that defendants Bell and

Balcarcel's motion for summary judgment be **GRANTED** because plaintiff failed to properly

_____

[1]In his complaint, plaintiff initially identified his action as a joint § 1983 action and
petition for writ of habeas corpus.  However, as described below, plaintiff only makes claims
pursuant to § 1983 in his complaint and the habeas case he refers to in his complaint, Cadogan v.
Renico, No. 04-71761 (E.D. Mich.) (Steeh, J.), is only relevant because plaintiff identifies it as
the litigation where he was denied access to the courts.

exhaust his administrative remedies prior to filing suit.  In the alternative, defendants Bell and Balcarcel should be granted summary judgment on plaintiff's denial of access to the courts and retaliation claims because no genuine issue of material fact is in dispute and defendants are entitled to judgment as a matter of law.

This Court also recommends that plaintiff's motion for partial summary judgment be **DENIED** because, contrary to plaintiff's arguments, the defendants did not admit any material facts or waive any arguments by failing to file a pleading responsive to plaintiff's complaint.

This Court further recommends that defendant Trombley **be dismissed** *sua sponte* because of a lack of exhaustion of administrative remedies and also because plaintiff has failed to state a claim against Trombley upon which relief can be granted.

If, as recommended, defendants Bell and Balcarcel's motion for summary judgment is granted and defendant Trombley is dismissed, then this case should be closed.

## II. Background

### A. Complaint

On May 2, 2006, plaintiff filed the complaint against defendants in this matter (D/E #1). In that complaint, plaintiff asserts that he was confined at the Saginaw Regional Facility (SRF) as an inmate at all times relevant to the complaint.  (Complaint, ¶ 3)  Plaintiff also asserted that defendant Bell was the SRF Librarian, defendant Balcarcel was the SRF Deputy Warden, and defendant Trombley was the SRF Custodian at all times relevant to this action.  (Complaint, ¶¶ 4-6)  Defendants were sued in both their individual and official capacities.  (Complaint, ¶¶ 4-6)

Plaintiff alleges that on or about January 17, 2006, he was transferred to SRF (Complaint, ¶ 12) and that, on February 7, 2006, plaintiff submitted a MDOC Form CSJ-602 ("Legal Photocopying Disbursement Authorization") to defendant Bell for four copies of legal exhibits to accompany a motion in a habeas case plaintiff had filed, Case No. 04-71761.  (Complaint, ¶ 9) Plaintiff also alleges that defendant Bell refused to make any copies of the legal exhibits and refused to put his reasons for refusing to make the copies in writing as required by MDOC policy.  (Complaint, ¶ 10)  Plaintiff further alleges that after repeated requests for copies, Bell told him, "You were sent here to see me."  (Complaint, ¶ 11)  Plaintiff also alleges that defendant Bell told him, "I am not intimidated by you," and threatened him with a major misconduct report for disobeying a direct order if he did not return to his seat in the library. (Complaint, ¶ 14)

Plaintiff also claims that he filed an "Access to Courts—Flash Kite" on the same day and that defendant Balcarcel responded to that kite on February 10, 2006, but did not require defendant Bell to put any reasons in writing.  (Complaint, ¶¶ 15-16)  Plaintiff further claims that defendant Trombley knew or should have known about the other defendants' actions and that she refused to remedy the constitutional violations.  (Complaint, ¶ 17)

Plaintiff identifies eight counts in his complaint.  Count I is against defendant Bell for violation of plaintiff's First Amendment right to petition the government for grievances; Count II is against Bell for violation of the Privileges and Immunities Clause of the United States Constitution, pertaining to access to the courts; Count III is against defendant Bell for violation of plaintiff's due process rights; Count IV is against defendants Bell and Balcarcel for a

conspiracy to deny plaintiff "of equal privileges and immunities to access to courts and due process;" Count V is against defendant Trombley for supervisor liability and failure to manage subordinate staff; Count VI is against defendant Bell for retaliation; Count VII is against defendant Bell for abuse of process; and Count VIII is against all three defendants for civil conspiracy.  (Complaint, ¶¶ 18-25)

**B. Motions Before the Court**

**a. Defendants Bell and Balcarcel's Motion for Summary Judgment (D/E #21)**

On June 24, 2008, defendants Bell and Balcarcel filed a motion for summary judgment (D/E #21).  In that motion, Bell and Balcarcel argue that they were entitled to summary judgment because plaintiff failed to exhaust his administrative remedies prior to filing suit. Defendants also argue that they are entitled to summary judgment on plaintiff's denial of access to the courts claim because plaintiff did not suffer an injury.  Defendants further argue that they entitled to summary judgment as to plaintiff's retaliation claim because the evidence in the record contradicts plaintiff's allegations.

On July 24, 2008, plaintiff filed a response to defendants Bell and Balcarcel's motion for summary judgment (D/E #27).  In that response, plaintiff argues that he exhausted his administrative remedies by sending MDOC Director Patricia Caruso a request for a declaratory ruling on Bell's refusal to make copies of legal exhibits for plaintiff's habeas motion.  Plaintiff also argues that he suffered an injury by the denial of access to the courts when his habeas petition was rejected because it lacked the exhibits that Bell had refused to copy.  Plaintiff further argued that he has "undeniably" shown all elements of a retaliation claim.

On July 29, 2008, defendants Bell and Balcarcel filed a reply to plaintiff's response (D/E #30). In that reply, defendants argue that a letter seeking a declaratory ruling does not satisfy the requirement that plaintiff exhaust his administrative remedies prior to filing suit. Defendants also argue that plaintiff's claim of actual injury fails because his habeas case had been dismissed for untimely filing four months prior to defendants' alleged wrongdoing in this case and because the District Court in that habeas case denied plaintiff's motion as moot.

On August 8, 2008, plaintiff filed a "traverse" in response to defendants Bell and Balcarcel's reply (D/E #31). In that traverse, plaintiff argues that habeas subject matters are not prison conditions subject to the exhaustion requirements of § 1997e(a). Plaintiff also argues that, to the extent his claims are subject to such requirements, either requesting a declaratory judgment is enough or § 1997e(a) violates due process as applied in this case.

### b. Plaintiff's Motion for Partial Summary Judgment (D/E #23)

On July 10, 2008, plaintiff filed a motion for partial summary judgment (D/E #23). In that motion, plaintiff argues that he is entitled to summary judgment on the question of whether he exhausted his administrative remedies in his habeas case and other material facts because defendants did not challenge exhaustion in a responsive pleading and, thereby, waived the issue. Plaintiff further argues that, even if defendants did not waive this issue, plaintiff's habeas claims were exhausted as a matter of law.

On July 14, 2008, defendants Bell and Balcarcel filed a response to plaintiff's motion for summary judgment (D/E #25). In that response, defendants argue that, pursuant to 42 U.S.C. § 1997e(g)(1), they may waive the right to reply to plaintiff's action without that waiver

constituting an admission of the allegations contained in the complaint. Defendants also argue that plaintiff's habeas claims, regardless of whether plaintiff exhausted them or not, have nothing to do with their argument that plaintiff failed to exhaust his administrative remedies with respect to his claims against them in this case.

On July 24, 2008, plaintiff filed a reply to defendants Bell and Balcarcel's response (D/E #29). In that reply, plaintiff argues that the federal rules of civil procedure apply to this action and, therefore, defendants were required to answer plaintiff's complaint.

## III. Standard of Review

Both defendants and plaintiff move for summary judgment pursuant to Fed. R. Civ. P. 56(b). Fed. R. Civ. P. 56(b) provides that "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move without or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant. See Matsushita Electric Industrial Co., Ltd. et al. v. Zenith Radio Corp., et. al., 475 U.S. 547, 587, 106 S.Ct. 1348, 1356 (1986); see also B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Once

the moving party has carried his burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." <u>Matsushita</u>, 475 U.S. at 587, 106 S.Ct. 1348.  The opposing party cannot merely rest upon the allegations contained in his pleadings.  Rather, he must submit evidence demonstrating that material issues of fact exist. <u>Banks v. Wolfe County Bd. of Educ.</u>, 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56(e). "Where the record taken as a whole could not lead a rational trier of <u>fact</u> to find for the non-moving party, there is no 'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 587, 106 S.Ct. 1348 (<u>quoting</u> <u>First National Bank of Arizona v. Cities Service Co.</u>, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592 (1968)).

**IV. Discussion**

As a preliminary matter, this Court would note that plaintiff initially identified his complaint as a joint § 1983 action and petition for writ of habeas corpus.  In <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), the Supreme Court addressed the interplay between 42 U.S.C. § 1983 and habeas corpus[2] before concluding that when a prisoner seeks equitable relief that challenges the fact or duration of confinement, habeas corpus is the sole form of relief.  <u>Preiser</u>, 411 U.S. at 489.  <u>See also</u> <u>Schilling v. White</u>, 58 F.3d 1081, 1083 (6th Cir. 1995).  On the other hand, § 1983 "is a proper remedy for a state prisoner who is

---

[2]The habeas corpus statute authorizes a court to review the conviction "of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  A prisoner who is in custody because his constitutional or statutory rights were violated may be entitled to sue under § 1983 because he has been deprived of his liberty by a person acting under color of law.

making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody." Preiser, 411 U.S. at 489.

In this case, as described above, plaintiff's complaint only challenges the conditions of his prison life and he does not contest the fact or duration of his confinement. Consequently, this is solely a § 1983 case and plaintiff's previous habeas case is only relevant because plaintiff identifies it as the litigation where he was denied access to the courts. To the extent plaintiff argues the merits of his habeas claim in his briefs or seeks partial summary judgment on the issue of whether he exhausted his state remedies in his habeas case, those issues will not be addressed here because they are not part of this case. Moreover, this Court would also note that the habeas case plaintiff refers to has already been dismissed by the Honorable George Caram Steeh on the basis that plaintiff failed to exhaust his state remedies[3] and that dismissal was upheld by the Sixth Circuit. See Cadogan v. Renico, No. 04-71761, 2008 WL 3979496, *1 (E.D. Mich. August 25, 2008) (Steeh, J.) (describing history of case).

**A. Defendants Bell and Balcarcel's Motion for Summary Judgment (D/E #21)**

**1. Exhaustion of Administrative Remedies**

Defendants Bell and Balcarcel first seek summary judgment on the basis that plaintiff failed to exhaust his administrative remedies prior to filing suit. Pursuant to the Prison Litigation Reform Act of 1995 (PLRA), 110 Stat. 1321-71, as amended 42 U.S.C. §§ 1997e *et*

---

[3]A writ of habeas corpus may not be granted unless the petitioner has exhausted available state-court remedies. 28 U.S.C. § 2254(b)(1). In order to satisfy the exhaustion requirement, "a petitioner's claim must be 'fairly presented' to the state courts before seeking relief in the federal courts." Whiting v. Burt, 395 F.3d 602, 612 (6th Cir.2005) (citing Baldwin v. Reese, 541 U.S. 27, 29, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004)).

*seq.*, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a). Accordingly, exhaustion of available administrative remedies is mandatory in order for prisoners to bring a claim in federal court.  Jones v. Bock, 127 S.Ct. 910, 914 (2007); Woodford v. Ngo, 126 S.Ct. 2378, 2383 (2006).  Not only must the prisoner exhaust all available remedies but such exhaustion must be proper, including "compliance with an agency's deadlines and other critical procedural rules."  Woodford, 126 S.Ct. at 2386 (holding that an inmate's exhaustion must be in compliance with applicable grievance procedures, specifically deadlines, because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings").  However, § 1997e does not impose a jurisdictional bar to federal jurisdiction, Curry v. Scott, 249 F.3d 493, 501-503 (6th Cir. 2001), and while the preferred practice is for inmates to complete the grievance process prior to the filing of an action, "because the exhaustion requirement is not jurisdictional, district courts have some discretion in determining compliance with the statute."  Wyatt v. Leonard, 193 F.3d 876, 879 (6th Cir. 1999).

In this case, Bell and Balcarcel cite, but do not attach as an exhibit, MDOC Policy Directive 03.02.130 (effective 12/19/2003)[4] and they assert that the policy directive provides for a third-step grievance process by which prisoners may seek "redress for alleged violations of policy and procedure or unsatisfactory conditions of confinement."  (Defendants Bell and

---

[4]MDOC Policy Directive is attached as Exhibit G to Plaintiff's Response to Defendants Bell and Balcarcel's Motion for Summary Judgment.

Balcarcel's Brief in Support of Motion for Summary Judgment, p. 7)  Bell and Balcarcel also

submitted evidence demonstrating that plaintiff did not grieve the allegations contained in his

complaint through the three-step grievance process set forth in MDOC policy directives.

(Grievance Inquiry Form with applicable Step III Grievances, attached as Exhibit D to

Defendants Bell and Balcarcel's Motion for Summary Judgment)  Plaintiff does not dispute that

evidence or argue that he completed the MDOC grievance process.  Instead plaintiff argues that

he satisfied the exhaustion requirement through the request for a declaratory ruling that he sent

to the MDOC Director[5] or through the exhaustion of administrative remedies relating to his

habeas claims.  However, neither of plaintiff's arguments has any merit.

In two unpublished opinions, the Sixth Circuit has expressly rejected the argument that

requesting a declaratory judgment pursuant to the Michigan Administrative Code, instead of

going through the MDOC grievance process, satisfies the exhaustion requirement for purposes of

the PLRA.  See McKaye v. Burnett, 104 Fed. Appx. 515, 516-517 (6th Cir. 2004); Ziegler v.

Martin, 47 Fed.Appx. 336, 337 (6th Cir. 2002).  See also Freeman v. Francis, 196 F.3d 641, 644

(6th Cir. 1999) (holding that prisoners must exhaust the institutional grievance procedure, not

some alternative remedy that is not designed to address prison conditions).[6]  Because filing a

---

[5]On February 14, 2006, Plaintiff sent a letter to Patricia Caruso, Director of MDOC,
requesting a declaratory ruling from that office regarding Defendant Bell's alleged refusal to
make copies of legal exhibits in Plaintiff's pending habeas proceedings.  (Letter to Patricia
Caruso, Request for Declaratory Ruling, dated 2/14/2006, attached as Exhibit B to Defendants'
Motion for Summary Judgment).

[6]This Court would also note that the plaintiff in this case made the same argument in an
earlier care before the Honorable Denise Page Hood and Judge Hood rejected plaintiff's
argument that the filing of an administrative request for a declaratory ruling pursuant to the

request for a declaratory ruling is not part of the MDOC's institutional grievance procedure, such action does not function as the exhaustion of administrative remedies required before the filing of a § 1983 suit.

Moreover, plaintiff's argument that he exhausted his habeas claims is irrelevant to whether he exhausted his claims in this case. Section 1997e(a) provides that no action shall be brought with respect to prison conditions under § 1983 until such administrative remedies as are available are exhausted. Plaintiff's claims relating to prison conditions; denial of access to the courts and retaliation, and the administrative remedies for those claims were clearly not exhausted regardless of whether plaintiff exhausted his administrative remedies with respect to the claim he raised in an earlier petition for writ of habeas corpus.

In light of plaintiff's clear failure to properly exhaust his administrative remedies through the MDOC grievance process and the lack of merit in plaintiff's arguments, this Court finds that plaintiff has failed to exhaust his administrative remedies prior to filing suit and defendants are entitled to summary judgment pursuant to 42 U.S.C. § 1997e(a).

---

Michigan Administrative Procedures Act satisfies the exhaustion requirement under § 1997e(a). See Cadogan v. Vittitow, No. 06-15235, 2007 WL 2875464, *3 (E.D. Mich. September 30, 2007) (Hood, J.).

### 2. Qualified Immunity

Defendants Bell and Balcarcel also seek summary judgment with respect to some of plaintiff's claims on the basis of qualified immunity.  Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation."  Saucier v. Katz, 533 U.S. 194, 200; 121 S.Ct. 2151; 150 L.Ed.2d 272 (2001) *overruled on other grounds by* Pearson v. Callahan, __ S.Ct. __, No. 07-751, 2009 WL 128768 (U.S. Jan. 21, 2009).  The privilege is an immunity from suit and not a mere defense to liability.  Saucier, 533 U.S. at 200.  As a result, courts have "repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation."  Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam).

"A court should not grant summary judgment on the issue of qualified immunity if there exists a genuine issue of material fact, 'involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights.'"  Flint ex rel. Flint v. Kentucky Dept. of Corrections, 270 F.3d 340, 346-347 (6th Cir. 2001) quoting Poe v. Haydon, 853 F.2d 418, 425-426 (6th Cir. 1988).  A court required to rule upon the qualified immunity issue must consider whether the facts alleged show the officer's conduct violated a constitutional right and whether that constitutional right was clearly established.  Saucier, 533 U.S. at 201.  "The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.  Pearson v. Callahan, __ S.Ct. __, No. 07-751, 2009 WL 128768,

*9 (U.S. Jan. 21, 2009).  "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable."  Saucier, 533 U.S. at 201.

### a. Access to the Courts

Bell and Balcarcel argue that they did not violate plaintiff's right to access the courts. Inmates have a constitutionally protected right of access to the courts.  See Bounds v. Smith, 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977).  However, that right of access to the courts is not unrestricted and does not mean that an inmate must be afforded unlimited litigation resources.  See Lewis v. Casey, 518 U.S. 343, 352-55, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). There is no generalized "right to litigate" which is protected by the First Amendment, Thaddeus-X v. Blatter, 175 F.3d 378, 391 (6th Cir.1999), and an inmate claiming that he was denied access to the courts must show that he suffered an actual litigation-related injury or legal prejudice to a non-frivolous legal proceeding because of the actions of the defendants.  Lewis, 518 U.S. at 349- 51; Boswell v. Mayer, 169 F.3d 384, 387 (6th Cir. 1999); Pilgrim v. Littlefield, 92 F.3d 413, 416 (6th Cir. 1996).

Thus, not every infringement or inconvenience suffered by the litigating prisoner implicates this constitutional right.  As stated in Lewis:

> The requirement that an inmate alleging a violation of Bounds
> must show actual injury derives ultimately from the doctrine of
> standing, a constitutional principle that prevents courts of law from
> undertaking tasks assigned to the political branches.  It is the role
> of courts to provide relief to claimants, in individual or class

-13-

> actions, who have suffered, or will imminently suffer, actual harm;
> it is not the role of courts, but that of the political branches, to
> shape the institutions of government in such fashion as to comply
> with the laws and the Constitution.  In the context of the present
> case:  It is for the courts to remedy past or imminent official
> interference with individual inmates' presentation of claims to the
> courts; it is for the political branches of the State and Federal
> Governments to manage prisons in such fashion that official
> interference with the presentation of claims will not occur.  Of
> course, the two roles briefly and partially coincide when a court, in
> granting relief against actual harm that has been suffered, or that
> will imminently be suffered, by a particular individual or class of
> individuals, orders the alteration of an institutional organization or
> procedure that causes the harm. But the distinction between the
> two roles would be obliterated if, to invoke intervention of the
> courts, no actual or imminent harm were needed, but merely the
> status of being subject to a governmental institution that was not
> organized or managed properly. If-to take another example from
> prison life-a healthy inmate who had suffered no deprivation of
> needed medical treatment were able to claim violation of his
> constitutional right to medical care, simply on the ground that the
> prison medical facilities were inadequate, the essential distinction
> between judge and executive would have disappeared: it would
> have become the function of the courts to assure adequate medical
> care in prisons.  [Lewis, 518 U.S. at 349-350.] [citations omitted]

In this case, defendants Bell and Balcarcel argue that they are entitled to summary judgment on plaintiff's denial of access to the courts claim because plaintiff did not suffer any litigation-related injury due to the alleged constitutional violations.  In their initial motion, defendants assert that plaintiff has made absolutely no showing that his constitutional interests were impinged upon in any way by the refusal to copy his documents.  Plaintiff counters in his response with the assertion that he suffered an injury when a motion in his habeas case was rejected because it lacked the exhibits that Bell had refused to copy.  In support of that assertion, plaintiff points to, but does not attach, an opinion and order from his habeas case in which the

Honorable George Caram Steeh denied plaintiff's motion to alter or amend, motion to compel, and motion for appointment of counsel. See Cadogan v. Renico, No. 04-71761 (E.D. Mich. August 24, 2006) (Steeh, J.)  In their reply, defendants assert plaintiff's habeas case had already been dismissed due to plaintiff's untimely filing four months prior to the defendants' alleged wrongdoing in this case, and that the specific motion plaintiff referred to was denied as moot.

As background for this case, this Court would note that plaintiff first filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on December 23, 1999, and that petition raised a number of claims, including a claim made, pursuant to Batson v Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) that his constitutional right to equal protection had been violated at his trial by the use of peremptory challenges to remove potential jurors on account of that potential juror's race.  (Plaintiff's Petition, E.D. Mich. Case No. 99-76115, D/E #1, December 23, 1999.)  On October 18, 2000, the Honorable Bernard A. Friedman issued an opinion and order dismissing plaintiff's petition without prejudice on the basis that plaintiff had failed to exhaust his state remedies prior to filing the petition and he still had an available post-conviction remedy through M.C.R. 6.500, *et. seq.*, with which to raise those claims. Cadogan v. Libolt, No. 99-76115 (E.D. Mich. October 18, 2000) (Friedman, J.).  Judge Friedman's opinion was later upheld on appeal by the Sixth Circuit.  Cadogan v. Libolt, No. 00-2427 (6th Cir. July 31, 2001); *reconsideration den.* December 5, 2001.

On May 10, 2004, plaintiff filed another petition for writ of habeas corpus.  (Plaintiff's Petition, E.D. Mich. Case No. 04-71761, D/E #1, May 10, 2004.)  In that petition, plaintiff raised four claims, including the Batson claim raised in his previous petition.  On May 11, 2005, the

-15-

Honorable George Caram Steeh summarily dismissed without prejudice plaintiff's petition on the basis that two of plaintiff's claims, including the Batson claim, were barred by the law-of-the-case doctrine and plaintiff had failed to exhaust his state remedies with respect to his two new claims.  Cadogan v. Renico, No. 04-71761 (E.D. Mich. May 11, 2005) (Steeh, J.).  Plaintiff subsequently filed a motion to vacate judgment, which was construed as a motion for reconsideration and, in the alternative, a motion to amend his habeas petition to delete the unexhausted claims and proceed only on his exhausted claims.  (Plaintiff's Motion, E.D. Mich. Case No. 04-71761, D/E #65, June 6, 2005.)  On June 14, 2005, Judge Steeh denied plaintiff's motion for reconsideration and to amend his habeas petition.  Cadogan v. Renico, No. 04-71761 (E.D. Mich. June 14, 2005) (Steeh, J.).

On June 24, 2005, plaintiff filed a second motion to amend his habeas petition to delete his unexhausted claims and to proceed only with his Batson claim that he raised in his original habeas petition.  (Plaintiff's Motion, E.D. Mich. Case No. 04-71761, D/E #67, June 24, 2005.)  On July 25, 2005, Judge Steeh denied plaintiff's second motion to amend his habeas petition on the basis of the law-of-the case doctrine.  Cadogan v. Renico, No. 04-71761 (E.D. Mich. July 25, 2005) (Steeh, J.).  According to Judge Steeh, he had indicated in his opinion and order of summary dismissal, and again in his opinion and order denying petitioner's previous motion to amend the petition, that plaintiff's Batson claim has not been exhausted in the state courts.  Judge Steeh noted in both those opinions and orders that plaintiff had attempted to raise his Batson claim in a prior habeas petition, but Judge Friedman had found the claim to be

unexhausted and the Sixth Circuit had declined to upset that ruling on several appeals filed by plaintiff.

On October 4, 2005, plaintiff filed a notice of appeal with respect to Judge Steeh's orders dismissing plaintiff's petition for writ of habeas corpus, denying plaintiff's motion for reconsideration or to amend the habeas petition, and denying plaintiff's second motion to amend his habeas petition. (Plaintiff's Notice of Appeal, E.D. Mich. Case No. 04-71761, D/E #72, October 4, 2005.) Plaintiff also filed an application to proceed *in forma pauperis* on appeal. (Plaintiff's Application, E.D. Mich. Case No. 04-71761, D/E #73, October 4, 2005.)

On October 13, 2005, Judge Steeh denied plaintiff a certificate of appealability and leave to appeal in forma pauperis. Cadogan v. Renico, No. 04-71761 (E.D. Mich. October 13, 2005) (Steeh, J.). According to Judge Steeh, plaintiff's notice of appeal was untimely and, even if it had been timely, he would have denied it on the merits anyway.

On October 24, 2005, plaintiff filed a motion to amend Judge Steeh's October 13, 2005 order. (Plaintiff's Motion, E.D. Mich. Case No. 04-71761, D/E #77, October 24, 2005.) In that motion, plaintiff argued that his "empirical evidence" plainly showed that he filed a § 2253 motion for certificate of appealability on August 7, 2005 and, while that document had not docketed by the court, Judge Steeh should amend his October 13, 2005 order finding that plaintiff's notice of appeal was untimely.

On December 5, 2005, the Sixth Circuit dismissed plaintiff's appeal from Judge Steeh's various orders as being untimely filed. Cadogan v. Renico, No. 05-2355 (6th Cir. December 5, 2005). However, the Sixth Circuit further directed the District Court to "review its files for the

-17-

documents which the appellant alleges that he filed with the court.  If any document is located which evinces the appellant's intent to appeal, it should be forwarded by the district court to this court as provided by Fed. R. App. P. 3(d) for docketing as a new appeal."

On February 27, 2006, plaintiff filed a motion to compel production of documents or, in the alternative, for appointment of counsel.  (Plaintiff's Motion, E.D. Mich. Case No. 04-71761, D/E #79, February 27, 2006.)  In that motion, plaintiff first noted that the Sixth Circuit had directed the District Court to forward any documents which petitioner may have filed to evince an intent to appeal on his part.  Plaintiff also requested that the application for certificate of appealability that he asserts he filed on August 7, 2005, but that Judge Steeh rejected, be included among those documents and that, if the District Court was not going to forward that document, that an evidentiary hearing be held to settle the issue and that plaintiff be appointed counsel for that hearing.

Along with that motion to compel, plaintiff filed a notice of exhibits in support of the motion to compel production of documents.  (Plaintiff's Notice, E.D. Mich. Case No. 04-71761, D/E #80, February 27, 2006.)  The listed exhibits were (1) the January 5, 2005 order from the Sixth Circuit, (2) Proofs of Service and Proofs of Mailing of Plaintiff's § 2253 Motion for Certificate of Appealability dated August 7, 2005, (3) Judge Steeh's October 13, 2005 denying Plaintiff's Motion for Certificate of Appealability, and (4) a "True Copy of § 2253 motion for [certificate of appealbility] in dispute – mailed/filed on August 7, 2005."  However, according to plaintiff's complaint, those exhibits were not attached to plaintiff's motion because of defendants' actions.

On April 10, 2006, plaintiff filed another notice of appeal notice of appeal with respect to the judgment of dismissal.  (Plaintiff's Notice of Appeal, E.D. Mich. Case No. 04-71761, D/E #84, April 10, 2006.)  That appeal sought review of any rulings of the District Court currently pending.  Plaintiff also argued that the notice of appeal should be applied *nunc pro tunc* to August 7, 2005 to correct a "procedural mess created by the district court."

On June 15, 2006, the Sixth Circuit denied the April 10, 2006 appeal filed by plaintiff with respect to the judgment of dismissal.  Cadogan v. Renico, No. 05-2355 (6th Cir. June 15, 2006).  According to the Sixth Circuit, plaintiff's appeal was ineffective as to any prospective orders by the District Court because a notice of appeal filed in anticipation of defeat is premature.  The Sixth Circuit also found that plaintiff's April 10, 2006 appeal was not filed within thirty days of any order entered by the District Court and was therefore untimely.

However, as part of its decision, the Sixth Circuit did note that it previously directed the District Court to search its records for any documents evincing an intent to appeal, including the notice of appeal plaintiff claimed he filed on August 5, 2005, and to forward such a document to the Sixth Circuit for docketing as a new notice of appeal.  According to the Sixth Circuit:

> No document was ever located or forwarded to this court for docketing.  Even if such a document dated August 5, 2005 were located and which could be treated as a notice of appeal, it would be late as it may apply to the May 16, 2005 judgment and the June 15, 2005 order denying reconsideration. [Cadogan v. Renico, No. 05-2355, *2 (6th Cir. June 15, 2006).]

On August 24, 2006, Judge Steeh denied plaintiff's motion to alter or to amend judgment, his motion for the appointment of counsel, and his motion to compel.  Cadogan v. Renico, No.

-19-

04-71761 (E.D. Mich. August 24, 2006) (Steeh, J.). With respect to plaintiff's motion to compel,

Judge Steeh found that:

> In light of the fact that this Court has already provided the Sixth Circuit with copies of the documents that petitioner claims evinces his intent to file a notice of appeal, this Court denies petitioner's motion for production of documents as moot. [Cadogan v. Renico, No. 04-71761, 2006 WL 2466242, *3 (E.D. Mich. August 24, 2006) (Steeh, J.).]

In light of that background, no genuine issue of material fact exists with respect to whether plaintiff suffered any litigation-related injury to a non-frivolous legal proceeding due to the alleged constitutional violations and defendants Bell and Balcarcel are entitled to summary judgment on plaintiff's denial of access to the courts claim on that basis.  The Sixth Circuit specifically directed the District Court in plaintiff's habeas case to forward to it any documents evincing a notice of appeal, including the notice of appeal plaintiff claimed he filed on August 5, 2005, for docketing as a new appeal.  Plaintiff then filed a motion requesting that certain documents, including the notice of appeal plaintiff claimed he filed on August 5, 2005, be included among those documents.  According to plaintiff's complaint, he was not able to attach the documents he wanted sent as exhibits to his motion because of defendants' actions and the defendants do not dispute this in their motion for summary judgment.  However, Judge Steeh clearly denied plaintiff's motion to compel the production of documents as moot because the documents plaintiff wanted sent to the Sixth Circuit had already been sent to the Sixth Circuit.

Thus, contrary to plaintiff's assertions, his motion to compel the production of documents was not denied because of the lack of any exhibits and he received the relief he requested.[7]

Moreover, even if the denial of copies had affected whether plaintiff's appeal was heard by the Sixth Circuit, plaintiff still would not have suffered an actual injury to a non-frivolous legal proceeding. As discussed above, in order to state a claim of denial of access to the courts, plaintiff was required to show an actual injury to a non-frivolous legal proceeding arising from the defendants' alleged conduct. Lewis, 518 U.S. at 351. As found by the Sixth Circuit, even if the notice of appeal plaintiff claimed he filed on August 7, 2005 was treated as a notice of appeal, it would be untimely as applied to the May 16, 2005 judgment and the June 15, 2005 order denying reconsideration. An August 7, 2005 notice appeal would have been timely as applied to Judge Steeh's July 25, 2005 opinion and order denying plaintiff's second motion to amend his habeas petition to proceed only with his Batson claim, but such an appeal appears to be frivolous as Judge Friedman dismissed plaintiff's first habeas application without prejudice on the ground that petitioner had failed to exhaust his claims, including a Batson claim, in the state courts and plaintiff's various attempts to appeal the dismissal of his habeas petition were unsuccessful. Moreover, Judge Steeh found that plaintiff had not exhausted his Batson claim in the years between the two petitions pursuant to the procedures outlined in Judge Friedman's

_____

[7]Prior to Judge Steeh's decision on the motion to compel, the Sixth Circuit did state that no document was ever located or forwarded to this court for docketing, but when the documents were sent was in no way affected by whether Bell copied plaintiff's exhibits or whether plaintiff was able to attach them to his motion to compel production of documents. Thus, plaintiff lost nothing by his alleged inability to copy his documents and attach them as documents to his motion to compel.

opinion and plaintiff's attempts to appeal that opinion were also unsuccessful.  In this case, this Court will not, as plaintiff wishes, address the merits of plaintiff's assertion that he did exhaust his state remedies with respect to his <u>Batson</u> claim or the merits of that claim because granting such an request would grant plaintiff what he forfeited years ago through his self-created inability to comply with court rules or deadlines in both the district court and the court of appeals.

### b. Retaliation

Bell and Balcarcel also argue that they are entitled to summary judgment on plaintiff's retaliation claim.  To demonstrate  a claim alleging retaliation for exercising a constitutional right, a plaintiff must show that (1) he engaged in protected conduct; (2) the defendant took an adverse action against him "that would deter a person of ordinary firmness from continuing to engage in that conduct"; and (3) that the adverse action was taken (at least in part) because of the protected conduct.  <u>Thaddeus-X v. Blatter</u>, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). Protected conduct is defined as those actions taken pursuant to "individual rights with which the government generally cannot interfere."  <u>Thaddeus-X</u>, 175 F.3d at 387.

"An adverse action is one that would 'deter a person of ordinary firmness' from the exercise of the right at stake."  <u>Thaddeus-X v. Blatter</u>, 175 F.3d 378, 396 (6th Cir. 1999), quoting <u>Bart v. Telford</u>, 677 F.2d 622, 625 (7th Cir.1982).  Moreover, "in most cases, the question of whether an alleged retaliatory action poses a sufficient deterrent threat to be actionable will not be amenable to resolution as a matter of law."  <u>Bell v. Johnson</u>, 308 F.3d 594, 603 (6th Cir.

2002).  In fact, "unless the claimed retaliatory action is truly 'inconsequential,' the plaintiff's

claim should go to the jury."  Bell, 308 F.3d at 603.

   Under the causation element of a prisoner's prima facie case for retaliation, the subjective

motivation of the decision-maker is at issue and the plaintiff must show that the decision was

motivated, at least in part, by the plaintiff's protected activity.  Thaddeus-X, 175 F.3d at 399.

Once the plaintiff has met this burden, if the defendant can show that the same action would

have been taken in the absence of protected activity, the defendant is entitled to prevail on

summary judgment.  Smith v. Campbell, 250 F.3d 1032, 1038 (6th Cir. 2001).  There is no

causation where the defendant is not the decision-maker.  See Smith, 250 F.3d at 1038 (holding

that one of the defendants' comments did not demonstrate a causal connection between

plaintiff's filing of grievances and the decision to transfer plaintiff because it was uncontroverted

that the defendant making the comment was not the decision-maker in the case); Shehee v.

Luttrell, 199 F.3d 295, 301 (6th Cir. 1999) (holding that despite prisoner's allegation that prison

employees instigated the loss of his commissary position, the prison employees cannot be liable

on plaintiff's retaliation claim because they were not involved in the decision to terminate the

plaintiff); Bush v. Dictaphone Corp., 161 F.3d 363, 369 (6th Cir.1998) (holding that statements

by nondecision-makers cannot suffice to satisfy the plaintiff's burden of demonstrating animus).

The finding of no causation even occurs where some defendants instigated the adverse action,

Shehee v. Luttrell, 199 F.3d 295, 301 (6th Cir.1999), or where the defendants' recommendations

carried great weight with the final decision-maker, Cohen v. Smith, 58 Fed. Appx. 139, 143-144

(6th Cir. 2003).

In this case, defendants Bell and Balcarcel argue that no genuine issue of material fact exist with respect to plaintiff's retaliation claim and they are entitled to judgment as a matter of law.  In support of their motion, defendants attach an affidavit from Bell stating that he denied plaintiff photocopying services because plaintiff refused to follow the procedures to have them made and that he never retaliated against plaintiff.  (Affidavit of Ervin Bell, ¶¶ 3, 8, 10; attached as Exhibit I to Defendants Bell and Balcarcel's Motion for Summary Judgment)   According to Bell, plaintiff was required to show the staff member which documents he wished to have photocopied, at which time the staff member would make the determination of whether the documents qualified for the copying services. (Affidavit of Ervin Bell, ¶ 9-10; attached as Exhibit I to Defendants Bell and Balcarcel's Motion for Summary Judgment)   Defendants also attached Balcarcel's response to plaintiff's kite and that response reiterated the same reason for denying the copies:  "when a prisoner is indigent, the librarian will make copies of legal exhibits that cannot be reproduced.  You must show the librarian what you want copied. At that time he will decide what can be copied.  You have refused to do this. If you want copies made you must follow this process."  (Access to Courts—Flash Kite Response, dated February 10, 2006; attached as Exhibit A to Defendants Bell and Balcarcel's Motion for Summary Judgment)

In response to that evidence, plaintiff asserts that he has shown that he was engaged in protected conduct when he requested copies and a written explanation from Bell explaining the refusal to make copies, and that Bell's threat of a major misconduct report was made because of plaintiff's protected conduct.  However, plaintiff does not submit any evidence along with his

response relating to his case in support of his allegations.[8]  Plaintiff did attach an affidavit to

both his complaint and his motion for partial summary judgment in which he stated that Bell

refused to copy his documents as part of a conspiracy to deny plaintiff access to the courts

(Plaintiff's Affidavit, ¶ 4; attached as Exhibit 3 to Plaintiff's Complaint and as Exhibit 3 to

Plaintiff's Motion for Partial Summary Judgment), but the affidavit does not state that Bell

threatened him with a major misconduct ticket or discuss retaliation at all.  A plaintiff may not

merely rest upon the allegations contained in his pleadings.  Banks, 330 F.3d at 892; Fed. R. Civ.

P. 56(e).  By failing to submit any evidence with respect to the issues of an adverse act or

causation, plaintiff has failed to demonstrate that there is a genuine issue for trial and Bell and

Balcarcel are entitled to summary judgment on plaintiff's retaliation claim.

### B. Plaintiff's Motion for Partial Summary Judgment (D/E #23)

Plaintiff argues that he is entitled to summary judgment on the question of whether he

exhausted his administrative remedies in his habeas case and other material facts because

defendants did not challenge exhaustion in a responsive pleading and, thereby, waived the issue.[9]

However, plaintiff's argument in support of his motion for partial summary judgment is without

---

[8]Plaintiff did submits forms requesting copies in August 8, 2005 and November 28, 2006 (attached as Exhibit E to Plaintiff's Response to Defendants' Motion for Summary Judgment) and affidavits describing times he observed Bell denying other prisoners copies (attached as Exhibits C and D to Plaintiff's Response to Defendants' Motion for Summary Judgment), but none of that evidence is relevant to plaintiff's claims regarding Bell's refusal to copy his documents on February 7, 2006.

[9]As discussed above, the question of whether plaintiff exhausted his administrative remedies in his habeas case is essentially irrelevant in this case and has already been decided by other courts.

merit.  Contrary to plaintiff's assertions, defendants did not waive any arguments by failing to specifically deny them in a pleading responsive to plaintiff's complaint.  See Jones v. Bock, 549 U.S. 199, 213-214, 127 S.Ct. 910, 920 (U.S. 2007) (finding that "unlike in the typical civil case, defendants do not have to respond to a complaint covered by the PLRA until required to do so by the court, and waiving the right to reply does not constitute an admission of the allegations in the complaint."); 42 U.S.C. § 1997e(g)(1) ("Any defendant may waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983 of this title or any other Federal law.  Notwithstanding any other law or rule of procedure, such waiver shall not constitute an admission of the allegations contained in the complaint. No relief shall be granted to the plaintiff unless a reply has been filed.)

### C. Defendant Trombley

As discussed above, defendant Trombley has not yet been served in this matter and, consequently, did not join in defendant's Bell and Balcarcel's motion for summary judgment. Nevertheless, Trombley should be dismissed from this action *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B).  28 U.S.C. § 1915(e)(2)(B) provides that, in cases where a prisoner is proceeding *in forma pauperis,* the court shall dismiss the case at any time if the court determines that the action is frivolous or fails to state a claim upon which relief can be granted.  28 U.S.C. § 1915(e)(2)(B)(I)-(ii).  In this case, Trombley should be dismissed *sua sponte* because plaintiff clearly failed to exhaust his administrative remedies with respect to the claims against Trombley and also because plaintiff failed to state a claim upon relief can be granted against Trombley.

-26-

Although Trombley has not been served in this action and did not join in defendants Bell and Balcarcel's motion for summary judgment, the arguments those defendants made with respect to plaintiff's failure to exhaust his administrative remedies prior to filing suit applies equally to defendant Trombley and Trombley should be dismissed on that basis.  An action brought by a prison regarding prison condition is barred unless the prisoner has properly exhausted his administrative remedies prior to filing suit.  See 42 U.S.C. § 1997e(a); Woodford, 126 S.Ct. at 2386 (holding that an inmate's exhaustion must be in compliance with applicable grievance procedures, specifically deadlines, because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings").  Here, Bell and Balcarcel submitted evidence demonstrating that plaintiff did not grieve any of the allegations contained in his complaint through the three-step grievance process set forth in MDOC policy directives.  (Grievance Inquiry Form with applicable Step III Grievances, attached as Exhibit D to Defendants Bell and Balcarcel's Motion for Summary Judgment) and plaintiff does not dispute that evidence or argue that he completed the MDOC grievance process. Instead, as discussed above, plaintiff only offers the meritless arguments that he satisfied the exhaustion requirement through the request for a declaratory ruling that he sent to the MDOC Director or through the exhaustion of administrative remedies relating to his habeas claims.  In light of plaintiff's clear failure to properly exhaust his administrative remedies with respect to any of the claims in his complaint, Trombley should be dismissed *sua sponte*.

Moreover, if plaintiff had properly exhausted his administrative remedies with respect to his claims against Trombley, he still failed to state a claim upon which relief can be granted

against Trombley because he claims are solely based on Trombley's position as a supervisor at SRF.  To succeed in under § 1983 , a plaintiff must show personal involvement by the defendant in the constitutional violation.  Copeland v. Machulis, 57 F.3d 476, 481 (6th Cir. 1995) (per curiam).  A respondeat superior theory of liability, based on the right to control employees, is not cognizable under 42 U.S.C. § 1983.  See Turner v. City of Taylor,  412 F.3d 629, 649 (6th Cir. 2005); Hays v. Jefferson County, Ky., 668 F.2d 869, 874 (6th Cir. 1982).  "Thus, a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it.  At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."  Shehee v. Luttrell,  199 F.3d 295, 300 (6th Cir. 1999) (citations omitted).  Moreover, the Sixth Circuit held in Shehee that a denial of an administrative grievance and the failure to remedy the alleged constitutional violation did not constitute sufficient involvement to establish liability under 42 U.S.C. § 1983.  Shehee, 199 F.3d at 300.

In this case, plaintiff alleges that Trombley is liable under the theory of supervisor liability and as part of a civil conspiracy (Complaint, ¶¶ 22, 25), and the sole factual allegation plaintiff makes against Trombley is that Trombley knew or should have known about the other defendants's actions and that she refused to remedy the constitutional violations (Complaint, ¶ 17).  However, that failure to remedy the alleged constitutional violation does not constitute sufficient involvement to establish liability under § 1983, Shehee, 199 F.3d at 300, and plaintiff

makes no allegations of personal involvement by Trombley.  Consequently, plaintiff has failed to

state a claim upon which relief can be granted and Trombley should be dismissed *sua sponte*.

**V. Conclusion**

      For the reasons discussed above, the Court recommends that defendants Bell and

Balcarcel's motion for summary judgment be granted because plaintiff failed to properly exhaust

his administrative remedies prior to filing suit.  In the alternative, defendants Bell and Balcarcel

should be granted summary judgment on plaintiff's denial of access to the courts and retaliation

claims because no genuine issue of material fact is in dispute and defendants are entitled to

judgment as a matter of law.

      This Court also recommends that plaintiff's motion for partial summary judgment be

denied because, contrary to plaintiff's arguments, the defendants did not admit any material facts

or waive any arguments by failing to file a pleading responsive to plaintiff's complaint.

      This Court further recommends that defendant Trombley be dismissed *sua sponte*

because of a lack of exhaustion of administrative remedies and also because plaintiff has failed

to state a claim against Trombley upon which relief can be granted.

      If, as recommended, defendants Bell and Balcarcel's  motion for summary judgment is

granted and defendant Trombley is dismissed, then this case should be closed.

      The parties to this action may object to and seek review of this Report and

Recommendation, but are required to act within ten (10) days of service of a copy hereof as

provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific

objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140

(1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v.

Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues,

but fail to raise others with specificity, will not preserve all the objections a party might have to

this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir.

1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).

Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this

magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the

opposing party may file a response.  The response shall be no more than 20 pages in length

unless, by motion and order, the page limit is extended by the court.  The response shall address

each issue contained within the objections specifically and in the same order raised.

s/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge

Dated:  January 28, 2009

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and plaintiff via the Court's ECF System and/or U. S. Mail on January 28, 2009.

s/J, Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan

-30-